Filed 7/21/23
See dissenting opinion

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| In re DELILA D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080389 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ118579) |
| v. | OPINION |
| M.T., | |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Dorothy McLaughlin, Judge. Conditionally reversed with directions.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Larisa R-McKenna, Deputy County Counsel, for Plaintiff and Respondent.


1

This case concerns a social worker's duty to inquire whether a child involved in a dependency proceeding "is or may be an Indian child" under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA), a duty commonly referred to as the "initial inquiry." (Welf. & Inst. Code, § 224.2, subd. (a).)[1] In 2018, our Legislature expanded this duty as part of Assembly Bill No. 3176 (2017-2018 Reg. Sess.), which added various new ICWA-related provisions to the Welfare and Institutions Code that became effective January 1, 2019. (Stats. 2018, ch. 833 (A.B. 3176), § 5.)

Sponsored by a tribal coalition, the new law was designed to increase tribes' opportunity to be involved in child custody cases involving Indian children by, among other things, expanding the scope of the initial inquiry beyond the child's parents. The new law was also designed to bring California law into compliance with recent federal ICWA regulations imposing minimum requirements to state court emergency proceedings involving Indian children. To achieve these purposes, A.B. 3176 imposed new ICWA-related requirements for the temporary custody and detention of Indian children and expanded the initial inquiry to include "extended family members, others who have an interest in the child, and the party reporting child abuse or neglect." (§ 224.2, subd. (b); see also §§ 306, 319.)

At issue in this appeal is whether the initial inquiry encompasses available extended family members in *every* proceeding where a child is removed from home or in

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

only those cases where the social worker takes temporary custody of the child without a warrant under exigent circumstances, as our court recently held in *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*). In this case, the child was initially taken into the custody of the Riverside County Department of Public Social Services (the department) by protective custody warrant before being detained by the juvenile court and later removed at disposition. Reunification efforts failed, and the juvenile court ultimately terminated parental rights and freed the child for adoption. Relying on *Robert F.*, the department argues that because the child wasn't initially removed from home without a warrant, the duty to interview available to extended family members never arose.

We conclude there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home. Applying a narrower initial inquiry to the subset of dependencies that begin with a temporary removal by warrant frustrates the purpose of the initial inquiry and "den[ies] tribes the benefit of the statutory promise" of A.B. 3176. (*In re S.S.* (2023) 90 Cal.App.5th 694, 711 (*S.S.*).) The goal of the initial inquiry is to determine whether ICWA's protections may apply to the proceeding, and the way a child is initially removed from home has no bearing on the question of whether they may be an Indian child. The holding of *Robert F.* is, in our view, contrary to both the letter and spirit of A.B. 3176.

Because the department in this case failed to ask the child's available extended family members whether the child has any Native American ancestry, we conditionally reverse the order terminating parental rights and remand for the juvenile court to direct the department to complete its investigation.

**I**

**FACTS**

The subject of this dependency is Delila D., whose mother, M.T. (mother), and father, M.D. (father), have a history of methamphetamine use and homelessness. Before this proceeding began, mother and father signed a caregiver's affidavit giving mother's friend, Amanda, permission to care for Delila. On January 22, 2021, the department received a referral alleging that Amanda's boyfriend was sexually abusing Delila and her half sibling. At the time, the half sibling was living with the maternal uncle, A.M. As part of her investigation, the social worker interviewed the half sibling and the maternal uncle, and both confirmed the allegations of sexual abuse.

On January 24, 2021, the social worker obtained a protective custody warrant for Delila, and the following day, the department placed her in a confidential foster home. Both mother and father denied having any Native American ancestry.

On January 27, 2021, the department filed a dependency petition on behalf of Delila, alleging she fell within the meaning of section 300, subdivision (b) (failure to protect). The juvenile court held the detention hearing the following day and found a prima facie case to detain Delila from her parents.

4

In a jurisdiction and disposition report filed on February 18, 2021, the social worker listed the names and contact information of seven relatives she had attempted to notify about Delila's detention and interview about potential placement. She had received no response to the letters she had sent to the mailing addresses she had on file, and she was unable to reach any of the individuals by phone, as the numbers were either wrong or no longer in service.

On April 2, 2021, the juvenile court declared Delila a dependent under section 300, subdivision (b), removed her from her parents' care, ordered family reunification services for both mother and father, and found ICWA did not apply. During the reunification period, the department placed Delila with her half sibling, E., in the home of E.'s paternal grandmother (to whom Delila is not biologically related). Delila thrived in the caretaker's home, and the caretaker wanted to adopt her.

Reunification efforts were unsuccessful for both parents, and on November 22, 2022, the court held a selection and implementation hearing at which it terminated parental rights and ordered adoption as Delila's permanent plan.

## II

## ANALYSIS

Mother challenges the order terminating parental rights on the ground the court's prior finding that ICWA does not apply lacks evidentiary support. She argues the department was required under section 224.2, subdivision (b) (section 224.2(b)) to ask

available extended family members whether Delila may have Indian ancestry and that its failure to do so requires conditional reversal. We agree.

A.      *Inquiry and Notice Generally*

Congress enacted ICWA in 1978 out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them" by state agents who "fail[] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." (25 U. S. C. § 1901(4) & (5).) The statute's purpose is to protect Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902.)

ICWA effectuates this purpose by setting minimum federal standards state courts must follow in voluntary or involuntary custody proceedings involving Indian children. (*Ibid.*; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 287 (*T.G.*).) "If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. § 1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. § 1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish." (*Haaland v. Brackeen*, 599 U.S. __, __, 2023 U.S. Lexis 2545 (slip opn., at *18) (*Brackeen*).)

Involuntary state court proceedings to place an Indian child in foster care or terminate parental rights "are subject to especially stringent safeguards." (*Brackeen*,

6

*supra*, U.S. Lexis 2545, citing 25 C.F.R. § 23.104 (2022).) For example, the party initiating the proceeding must "notify the parent or Indian custodian and the Indian child's tribe" (25 U.S.C. § 1912(a)); the court cannot order a foster care placement unless it finds "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" (25 U.S.C. § 1912(e)); and, to terminate parental rights, the court must make the same finding "beyond a reasonable doubt" (25 U.S.C § 1912(f)).

Because ICWA applies to child custody proceedings involving an "Indian child," procedural rules for determining whether a child qualifies as such are crucial to the statute's application. ICWA defines an Indian child as either 1) a member of a tribe or 2) a biological child of a member and eligible for membership. (25 U.S.C. § 1903(4); § 224.1, subd. (a).) The federal regulations implementing ICWA require state courts to ask each "participant" in a child custody proceeding whether they "know[]" or have "reason to know" the child is an Indian child. (25 C.F.R. § 23.107(a).) The regulations also require state courts to direct the parties to inform the court if they receive information providing a reason to know the child is an Indian child. (*Ibid.*) When the court or department "knows or has reason to know" that an Indian child is involved, they must send notice to any tribe to which the child belongs, or in which they may be eligible for membership, informing the tribe of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3.) Notice is "central to effectuating

7

ICWA's purpose" because it enables the tribes to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the custody proceeding. (*T.G.*, *supra*, 58 Cal.App.5th at p. 288.)

The federal regulations establish the minimum investigation a state must conduct into a child's possible status as an Indian child. However, ICWA allows states to require more thorough investigations, and it directs that where states do so, the higher state standard "shall apply." (25 U.S.C. § 1921.) California has enacted such higher standards for determining whether a child is an Indian child. (*T.G.*, *supra*, 58 Cal.App.5th at pp. 289-290.) This case involves only the first step in the investigation—the initial inquiry, which the Legislature recently expanded with the enactment of A.B. 3176. (Stats. 2018, ch. 833, § 5.)

B. *Section 224.2 and the Initial Inquiry*

Added by A.B. 3176, section 224.2 sets out, among other things, the duty of initial inquiry under California law. Section 224.2, subdivision (a) (section 224.2(a)) states that both courts and social workers "have an affirmative and continuing duty to inquire whether a child" for whom a section 300 petition is or may be filed "is or may be an Indian child." The duty "begins with the initial contact," and includes, but is "not limited to" asking the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2(a).)

8

Section 224.2(b) provides further guidance on the steps a social worker must take as part of the initial inquiry. It consists of two sentences. The first provides that "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," the social worker "has a duty to inquire whether that child is an Indian child." (§ 224.2(b).) The second identifies which individuals are part of a social worker's initial inquiry. It states that the "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (*Ibid.*)

In addition, rule 5.481 of the California Rules of Court, which the Judicial Council revised to implement section 224.2(b), states: "The party seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ." (Cal. Rules of Court, rule 5.481(a)(1) (rule 5.481).)[2]

Read together, these provisions impose on social workers a duty of initial inquiry that begins at first contact, lasts throughout the proceeding, and includes "but is not limited to" the reporting party, the child's parents and extended family members, and

---

[2] Unlabeled citations to rules refer to the California Rules of Court.

others who have an interest in the child, as those individuals become available during the case. In other words, the "duty to inquire begins with initial contact . . . and obligates the juvenile court and child protective agencies to ask *all relevant involved individuals* whether the child may be an Indian child." (*T.G.*, *supra*, 58 Cal.App.5th at p. 290, citing § 224.2, subds. (a)-(c), italics added.)

As we'll explain, these provisions represent an expansion to the scope of a social worker's duty of initial inquiry.

C.      *A.B. 3176 Expanded the Scope of the Initial Inquiry*

Codified in 2006 with the passage of Senate Bill No. 678 (2005-2006 Reg. Sess.), the duty of initial inquiry was originally set out in former section 224.3. (Stats. 2006, ch. 838 (S.B. 678); *In re Isaiah W.* (2016) 1 Cal.5th 1, 9.) That provision stated that juvenile courts and county welfare departments "have an affirmative and continuing duty" to inquire whether a child involved in a dependency proceeding is or may be an Indian child if the child had been placed in foster care or was "at risk of entering foster care." (*Isaiah W.*, at p. 9; former § 224.3, subd. (a).) Though former section 224.3 did not specify which individuals should be interviewed, our courts interpreted the provision to require inquiry of the parents only. (See, e.g., *In re C.Y.* (2012) 208 Cal.App.4th 34, 42 ["The initial inquiry . . . need only be made to the parents"]; see also *In re J.K.* (2022) 83 Cal.App.5th 498, 506 [noting the duty of initial inquiry "could be satisfied by asking the child's parents whether the child is or may be an Indian child"].)

10

As we've seen, under section 224.2, a social worker may no longer rely solely on the child's parents for information about possible Indian ancestry. Section 224.2(a) requires social workers to make the initial inquiry of the party reporting the abuse, and section 224.2(b) identifies several more individuals who must be interviewed, including extended family members and any others "who have an interest in the child." (§224.2(a) & (b).)

The legislative history of A.B. 3176 reveals that this amendment was "tribal in origin and purpose." (*S.S.*, *supra*, 90 Cal.App.5th at p. 699.) In November 2015, the California Department of Justice's Bureau of Children's Justice created the ICWA Compliance Task Force to gather empirical data on ICWA violations within the state and recommend changes to California's ICWA-implementing laws. (Cal. Health and Human Services Agency, Enrolled Bill Rep. on Assem. Bill No. 3176 (2017-2018 Reg. Sess.) prepared for Governor Brown (Aug. 31, 2018 & Sept. 4, 2018) p. 5 (Enrolled Bill Report).) Made up of tribal representatives and advocates, the task force was the first of its kind in California. (*Ibid.*)

The task force issued its report in 2017. Among other things, it recommended broadening the initial inquiry to include not just a child's parents, but their extended family members as well. (California ICWA Compliance Task Force, Report to the California Attorney General's Bureau of Children's Justice, 2017 [as of July 10, 2023], archived at https://perma.cc/NYF6-VPY9 (Task Force Report) at p. 26.) The report explained why relying on parents alone for the initial inquiry does not necessarily protect

11

the rights of the tribe: "When parents are the sole target of the initial inquiry, it should be understood that there are a variety of reasons why relying on the parents does not necessarily protect the child's best interests, or the rights of the tribe. Parents may simply not have that information, or may possess only vague or ambiguous information. [¶] The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law. Parents may even wish to avoid the tribe's participation or assumption of jurisdiction." (Task Force Report, p. 28.)

In 2017, after the task force issued its report, tribal leaders from across the state formed the California Tribal Families Coalition "to implement the [report's] comprehensive findings" and sponsor "key legislation that helps protect Native children and tribal sovereignty." (Enrolled Bill Report, *supra*, p. 6.) Comprised of 13 Tribal Council leaders and five of the seven co-chairs of the task force, the coalition's goal was "to provide a strong and unified voice on behalf of tribal children." (California Tribal Families Coalition <https://caltribalfamilies.org/> [as of July 10, 2023], archived at <https://perma.cc/NC9Z-2AGM>.) The coalition was A.B. 3176's "sponsor and source." (*S.S.*, *supra*, 90 Cal.App.5th at p. 701; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3176 [2017-2018 Reg. Sess.] as amended Apr. 11, 2018, pp. 1 & 10.)

As *S.S.* succinctly puts it, "California tribal leaders gathered narratives and data about the failure of implementation of the Act. They issued a report that generated the 2018 amendment: the Legislature embraced the tribal proposal swiftly and without

12

opposition. The resulting law required [social workers] to ask 'extended family members' whether the child may be an Indian child." (S.S., supra, 90 Cal.App.5th at p. 699.)

### D. *A.B. 3176 Imposed New Requirements for the Temporary Custody and Detention of Indian Children*

In addition to expanding the scope of the initial inquiry, A.B. 3176 imposed new ICWA-related requirements for the temporary custody and detention of Indian children. As many of the legislative materials describing A.B. 3176 observe, the changes to the temporary custody and detention provisions were "intended to 'conform [California law] to changes to federal regulations" governing [ICWA].'" (Assem. Com. on Human Resources, Rep. on Assem. Bill No. 3176 (2017-2018 Reg. Sess.) Apr. 10, 2018 Report, p. 1; Assem. Com. On Human Services, 3d reading as amended May 25, 2018, p. 1; Assem. Conc. in Sen. Amends., as amended Aug. 22, 2018, p. 1.)

In 2016, the federal government issued regulations applicable to emergency proceedings involving Indian children. The regulations defined an "emergency proceeding" as "any court action that involves an emergency removal or emergency placement of an Indian child," which, under California law, includes the detention hearing under section 319. (25 C.F.R. § 23.2; Welf. & Inst. Code, § 319.) Under the regulations, a state court may not order the emergency removal or placement of an Indian child unless it "make[s] a finding on the record that the emergency removal or placement is necessary to prevent imminent physical damage or harm to the child." (25 C.F.R. § 23.113(b).) The regulations also extended the court's initial inquiry obligation to emergency proceedings. (25 C.F.R. § 23.107(a).)

13

As the Enrolled Bill Report for A.B. 3176 notes, at the time of their issuance, these regulations represented "a departure from the existing application of ICWA in California, where the minimum federal standards often do not get applied until the dispositional hearing." (Enrolled Bill Report, *supra*, p. 8.) To bring California law into compliance with the 2016 regulations, our Legislature made several amendments to the ICWA-related provisions in article 7 of the juvenile court law (§§ 305-324.5), which governs temporary custody and detention prior to the jurisdiction hearing. (Welf. & Inst. Code, div. 2, part 1, ch. 2, arts. 1 & 7.)

For example, A.B. 3176 added "Emergency proceeding" to the definitions in section 224.1 and defined the term as "the initial petition hearing held pursuant to Section 319." (§ 224.1, subd. (*l*); Stats. 2018, ch. 833, § 3.) A.B. 3176 added a provision to section 319 that states that "any order detaining [an Indian] child pursuant to this section shall be considered an emergency removal within the meaning of Section 1922 of the federal Indian Child Welfare Act of 1978." (§ 319, subd. (i); Stats. 2018, ch. 833, § 22.) In addition, A.B. 3176 amended section 306, the provision authorizing social workers to take temporary custody of children in advance of the initial petition (i.e., detention) hearing, to require that "[u]pon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child." (§ 306, subd. (b); Stats. 2018, ch. 833, § 19.)

If the child taken into temporary custody is an Indian child (or there is "reason to know" they are), various provisions added by A.B. 3176 apply to both social workers and the juvenile court. For example, leading up to the detention hearing, the social worker must make "active efforts" to prevent the emergency removal of the Indian child from their home and must submit a detention report containing more information than required for non-Indian children. (§§ 306, subd. (f)(4), 319; Stats. 2018, ch. 833, §§ 19, 22.)

As another example, at the detention hearing, a higher standard applies to the removal of Indian children than non-Indian children. A court may detain a non-Indian child based on a finding that "[t]here is a substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without" detaining the child. (§ 319, subd. (c)(1).) In contrast, with the enactment of A.B. 3176, a court may detain an Indian child only upon a finding that detention is "necessary to prevent imminent physical damage or harm," and the court must "state on the record" the facts supporting that finding. (§ 319, subd. (d); Stats. 2018, ch. 833, § 22.) And, when a court orders the detention of an Indian child, ICWA's placement preferences (codified in § 361.31) apply to the emergency placement unless the court finds "good cause" to deviate from them. (§ 319, subd. (h)(1)(C); Stats. 2018, ch. 833, § 22.) Finally, A.B. 3176 added a provision allowing any party to request rehearing of the detention order for an Indian child at any time "[p]rior to disposition" to present evidence to the court that the

emergency placement "is no longer necessary to prevent imminent physical damage or harm to the child." (§ 319.4; Stats. 2018, ch. 833, § 23.)

As the legislative history of A.B. 3176 shows, the impetus for expanding the scope of the initial inquiry was different from the impetus for imposing the new ICWA-related requirements for temporary custody and detention. A tribal coalition prompted the expansion of the initial inquiry beyond parents, to include extended family members and others, whereas the 2016 federal regulations prompted the new temporary custody and detention requirements. (Enrolled Bill Report, *supra*, p. 8; see also *S.S.*, *supra*, 90 Cal.App.5th at p. 696 [observing that the Legislature expanded the initial inquiry "at the behest of tribes"].)

E. *The Department's Incomplete Initial Inquiry Requires Conditional Reversal*

Here, the social worker failed to ask the maternal uncle whether Delila is or may be an Indian child, despite the fact he was available from the outset of the case and she spoke with him about other matters. Mother argues this failure is a violation of section 224.2(b)'s clear mandate to make the initial inquiry of available extended family members. Relying on *Robert F.*, the department argues the obligation to interview extended family members arises only in cases that begin with the child being taken into temporary custody *without a warrant*. The department argues that because Delila was taken into custody by protective custody warrant, the social worker was not required to interview the child's extended family members.

16

We agree with mother. As we'll explain, we conclude *Robert F.* misinterprets the language and purpose of section 224.2(b).

          1.  *We decline to follow* Robert F.

In *Robert F.*, Robert's mother appealed the order terminating her parental rights on the same ground as mother does here: that the department failed to ask available extended family members whether Robert had Indian ancestry. (*Robert F.*, *supra*, 90 Cal.App.5th at p. 497.) Our court concluded that the duty to interview extended family members contained in section 224.2(b) arises only if the child was initially removed from home without a warrant under the exigent circumstances described in section 306, subdivision (a)(2). (*Robert F.*, at p. 504.) Based on this conclusion, we held the department was not required to interview extended family members because Robert was not initially removed from home without a warrant, he was removed by protective custody warrant. (*Ibid.*) In other words, circumstances occurring before Robert was even detained dictated the scope of the ICWA investigation that applied throughout his case, from disposition to termination of parental rights.

To reach this conclusion, *Robert F.* interpreted the first sentence of section 224.2(b) as dictating the only circumstance under which the duty described in the second applies. *Robert F.* held that section 224.2(b) "requires a county welfare department to ask extended family members about a child's Indian status *only if* the department has taken the child into temporary custody under section 306." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 504, italics added.) In addition, *Robert F.* concluded that section 224.2(b)'s reference

17

to temporary custody "pursuant to [s]ection 306" is limited to circumstances where the child is removed without a warrant. (*Robert F.*, at pp. 500-501.)

We cannot join this reasoning for two reasons. First, we disagree that temporary custody under section 306 is limited to circumstances where the child is removed without a warrant. Section 306 authorizes a department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant (§ 306, subds. (a)(1) & (2)) *and* when the child has been taken from home by means of a protective custody warrant issued under section 340 (§ 306, subd. (a)(1)).

When a child is removed by warrant, the taking is authorized by section 340, and the holding or maintaining in custody is authorized by section 306, subdivision (a)(1). That is, section 340 provides that when a child is taken from home by means of a warrant, the child must be "delivered to" the social worker. (§ 340, subd. (c) ["Any child taken into protective custody pursuant to this section shall immediately be delivered to the social worker who shall investigate, pursuant to Section 309, the facts and circumstances of the child and the facts surrounding the child being taken into custody and attempt to maintain the child with the child's family through the provision of services"].) Section 306, subdivision (a)(1), in turn, authorizes the social worker to "receive" the child and "maintain" them in temporary custody. (§ 306, subd. (a)(1).)

18

When a child is removed without a warrant, the taking is authorized by section 306, subdivision (a)(2) (for social workers) and by either section 305 or 305.6 (for police officers). If a social worker takes a child without a warrant, section 306, subdivision (a)(2) authorizes the social worker to "maintain" custody of the child. (See § 306, subd. (a)(2) [permitting the social worker to both "[t]ake into and maintain temporary custody of" a child the department removes from home without a warrant].) By contrast, if a police officer takes a child without a warrant, section 306, subdivision (a)(1) authorizes the social worker to "[r]eceive and maintain" the child upon delivery by the officer, pending the detention hearing. (§ 306, subd. (a)(1).)

Regardless of whether a child is taken into custody by law enforcement and then delivered to the department, or is taken by the department directly, it is the *maintaining in custody* that triggers the need for a detention hearing. (See § 315 ["If a child has been taken into custody under this article and *not released to a parent or guardian*, the juvenile court shall hold a hearing (which shall be referred to as a 'detention hearing') to determine whether the child shall be further detained"], italics added.) Whether the initial taking involves law enforcement—and is thus termed "protective custody"—does not alter the fact that the court is required to hold a detention hearing if the child is not going to be released to a parent or guardian. (See *In re Ethan C.* (2012) 54 Cal.4th 610, 625 ["If the child has been taken into temporary protective custody, and remains in custody at the time the dependency petition is filed (see § 305 et seq.), the court must promptly hold a

19

detention hearing to determine whether he or she should be returned to the parent or guardian pending the jurisdictional/dispositional hearing"].)

In this connection, we think it significant that section 224.2(b) uses the phrase "placed into temporary custody" not "taken into temporary custody." (§ 224.2(b).) In our view, this word choice indicates the Legislature intended to cover children initially taken into custody by a police officer (under section 305, 305.6, or 340) then delivered or *placed* into the department's temporary custody under section 306, subdivision (a)(1). There is no practical difference between children taken by warrant and those taken without a warrant, and so there is no reason to distinguish between them for ICWA inquiry purposes. If the department decides to retain custody, both categories of children require a detention hearing and are therefore at risk of an "emergency removal." (§ 319).

And, because the department, not law enforcement, is charged with conducting the ICWA investigation in a dependency proceeding, it simply makes more sense that section 224.2(b) would tie the initial inquiry to when the child is *delivered to* the department under section 306, subdivision (a)(1) and not when they are *initially taken* from home under section 340. We therefore conclude that section 224.2(b)'s reference to temporary custody "pursuant to [s]ection 306" is better read as including children who, though initially removed by protective custody warrant, are then delivered or placed into the department's custody pending a detention hearing.

Moreover, we are not persuaded by *Robert F.*'s justification for why the Legislature would exclude from the inquiry described in section 224.2(b) children

20

removed by warrant. *Robert F.* reasons the Legislature did so because it "intended to track federal guidelines for implementing ICWA," which recommend initial inquiry of extended family members in "emergency removal situations" only. (*Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503.) The opinion concludes: "In short, in crafting the narrow inquiry duty in section 224.2, subdivision (b) that applies to children removed [under exigent circumstances] pursuant to section 306, the Legislature was simply creating a duty that tracked federal guidelines for emergency removals." (*Id.* at p. 503, quoting *In re Adrian L.* (2022) 86 Cal.App.5th 342, 364 (conc. opn. of Kelley, J.).) This is also the reason our dissenting colleague gives for agreeing with *Robert F.*, reasoning that a removal under section 306 is considered an "emergency removal" under ICWA, whereas "a removal pursuant to an order issued under section 340 is not." (Dis. opn. *post*, at p. 4.)

However, this argument misconstrues the definition of an emergency removal under both the federal regulations and California law. Under both, the "emergency removal" is *not* the social worker's act of taking the child from home under exigent circumstances. Rather, the emergency removal is the *court's order* detaining the child at the detention hearing, regardless of how the child came to be in the department's custody leading up to that hearing. (See 25 C.F.R. § 23.2 [an "emergency proceeding" is "any court action that involves an emergency removal or emergency placement of an Indian child"]; see also § 315 ["[i]n the case of an Indian child, the hearing pursuant to Section 319 shall be considered an emergency removal under [ICWA]"].) Thus, because A.B. 3176 imposed new requirements for the detention of Indian children and because both

21

categories of removals (by warrant and warrantless) require the court to hold a detention hearing, we see no rational justification for interpreting section 224.2(b)'s reference to section 306 as excluding children removed by warrant.

Moreover, the federal guidelines simply recommend that social workers interview extended family members in emergency removal situations—they don't recommend that social workers do so *only in such situations*. (See U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) at p. 28, available at https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf [recommending "[a]s a matter of general best practice in child welfare," that social workers interview extended family members in emergency removal situations both as "possible emergency placements" and to determine whether the child may have Indian ancestry].) But even if the guidelines *did* recommend that states apply a narrower initial inquiry to children initially removed by warrant, ICWA expressly allows states to enact higher standards than those imposed or recommended under federal law. (25 U.S.C. § 1921.)

This brings us to our second reason for declining to follow *Robert F.* Even if its conclusion that section 306 excludes removals by protective custody warrant were correct, we would still disagree with its conclusion that the duty described in section 224.2(b) does not apply once a child initially removed by warrant is removed from parental custody at the disposition hearing.

22

First, section 224.2(b) does not state that the inquiry it describes applies "only if" a child is taken into temporary custody under section 306. (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [it is a "cardinal rule" of statutory interpretation that "courts may not add provisions to a statute"].) Section 224.2(b) does not contain the word only or any other language suggesting an intent to limit the inquiry it describes. And where, as here, where remedial legislation is involved, we must interpret the statute broadly to achieve its purpose. (See *In re I.F.* (2022) 77 Cal.App.5th 152, 163 [the affirmative and ongoing duty to inquire under California law serves a "remedial purpose" requiring us to broadly construe state ICWA statutes]; see also *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106 [courts must construe statutory provisions "in context, keeping in mind the statute's nature and *obvious purposes*"], italics added.)

Here, the obvious purpose of A.B. 3176 was to expand the scope of the initial inquiry beyond the parents. Nothing in the text of that amendment or its legislative history suggests an intent to apply the expanded inquiry in some cases but not others. Indeed, A.B. 3176 itself states that it amends existing law to "revise the specific steps a social worker . . . is required to take in making an inquiry of a child's possible status as an Indian child." (Stats. 2018, ch. 833 (A.B. 3176), § 1.) Notably, the Legislature did not say those steps apply only in the subset of dependency proceedings that begin with warrantless removals. We think that if the Legislature intended to so limit the initial inquiry, it would have said so.

Second, rule 5.481 requires social workers to make the inquiry described in section 224.2(b) any time the department is "seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption." (See rule 5.481(a)(1) [directing the department, in such circumstances, to ask "extended family members [and] others who have an interest in the child" about possible Indian ancestry].) Where, as here, the rule is not inconsistent with the statute, we are required to follow it. (See *R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 205 ["Rules of court have the force of law and are as binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law"]; see also *T.G.*, *supra*, 58 Cal.App.5th at p. 291 [concluding rule 5.481 is "entitled to judicial deference"].)

Third and perhaps most importantly, it simply doesn't make sense to apply different initial inquiries depending on how the child was initially removed from home, as that procedural happenstance has nothing to do with a child's ancestry.

For all these reasons, we conclude *Robert F.'s* interpretation of section 224.2(b) as "crafting [a] narrow inquiry duty" that applies only to children initially taken into temporary custody without a warrant contravenes the plain language and obvious purpose of A.B. 3176. (*Robert F.*, *supra*, 90 Cal.App.5th at p. 503.) We hold instead that the Legislature enacted section 224.2(b) to impose on departments a *broad* duty to inquire that applies regardless of how a child is initially removed from home.

The costs of broadening the inquiry are slight, as departments are already required to identify and to contact extended family members for various reasons unrelated to ICWA during dependency proceedings. (See *S.S.*, *supra*, 90 Cal.App.5th at p. 702 [providing a list of examples of such provisions].) But the "payoff can be large for tribes, whose children carry their cultures into the future." (*Id.* at p. 705.) "The inquiry required by the 2018 amendment is vital—literally: it can help keep cultures alive." (*Ibid.*) And, because tribal knowledge and experience tell us "there is a chance extended family members may have otherwise-unavailable information the child has Indian ancestry," the importance of interviewing such individuals when they are readily available cannot be overstated. (*Ibid.*)

We generally follow decisions of our own court, absent a compelling reason to depart. (*Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1204; see also *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109.) However, there are several considerations that compel us to depart from *Robert F.* First, that decision itself departed from earlier decisions of our court holding the duty of initial inquiry in section 224.2(b) "applies in every dependency proceeding." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678; see also *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*) [same].) Second, *Robert F.'s* interpretation is, in our view, based on a plain error of statutory construction that is easily corrected, and the error if put into force would significantly undermine the purpose of ICWA and the California statutes implementing ICWA. Third, the *Robert F.* interpretation is of recent origin, meaning neither courts nor the public have yet placed

25

significant reliance on it. (See *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 504, 552 ["[s]tare decisis has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response"], quoting *Hilton v. South Carolina Public Railways Comm'n* (1991) 502 U.S. 197, 202.)

### 2. *The department's error was prejudicial*

We conclude the department violated 224.2(b)'s clear mandate by failing to ask the maternal uncle whether Delila may have any Indian ancestry. And, because he was readily available throughout the proceeding and could have meaningful information about Delila's heritage, we conclude the violation prejudiced tribes and remand is necessary. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; *S.S.*, *supra*, 90 Cal.App.5th at p. 710.)

The analysis regarding the other relatives listed in the jurisdiction and disposition report that the social worker tried to interview about placement is less straightforward. While it's clear the phone numbers the social worker had on file for them were not correct, we cannot say the same about the addresses. Also, it is possible the individuals would choose not to respond about placement but would respond to a question about Delila's ancestry. On remand, the juvenile court shall decide in the first instance whether to order the department to send inquiries to those addresses or try to obtain additional contact information about them from mother and the maternal uncle.

## III

## DISPOSITION

We conditionally reverse the order terminating parental rights and remand the matter to the juvenile court with directions to comply with the inquiry provisions of section 224.2. The juvenile court shall order that within 30 days of the remittitur, the department perform its initial inquiry of Delila's potential Indian ancestry consistent with this opinion. If, after completing the initial inquiry, there is no reason to believe Delila is an Indian child, the court shall reinstate its order terminating parental rights. If the inquiry produces information substantiating Indian ancestry, the court shall vacate the order and proceed in compliance with ICWA and related California law.

CERTIFIED FOR PUBLICATION

SLOUGH _____

J.

I concur:

RAPHAEL _____

J.

27

[*In re Delila D.,* E080389]

MILLER, J., Dissenting

I respectfully dissent to the majority opinion finding that remand is necessary in order for the Riverside County Department of Social Services (Department) to conduct further inquiry of the relatives of minor, Delila D. as to whether she is an Indian child pursuant to the guidelines of Welfare and Institutions Code[1] section 224.2, subdivision (b). I follow this court's previous opinions of *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*) and *In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*). Since Delila was taken into custody pursuant to a protective warrant under section 340, the additional inquiry requirements of section 224, subdivision (b), do not apply. I would affirm.

A protective custody removal warrant under section 340 was obtained by the Department for Delila on January 24, 2021. Delila was detained and was placed in protective custody in a foster home on January 25, 2021.

"There is no federal duty to inquire of extended family members." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The duty of inquiry under state law comes from section 224.2, subdivision (b). Subdivision (b) of section 224.2 provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." The plain language of section 224.2, subdivision (b), provides that if a child is placed into the temporary custody of a county welfare department pursuant to section 306, there is a duty to inquire of extended relatives about Indian ancestry.

Section 306 provides, "(a) Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following: [¶] (1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer. [¶] (2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety. [¶] (b) Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."

Section 340, subdivision (a), provides, "Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing

2

on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement, a protective custody warrant may be issued immediately for the minor."

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*People v. Arias* (2008) 45 Cal.4th 169, 177.) " ' "[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." ' " (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 822.)

In *Robert F.*, this court found that the plain language of section 224.2, subdivision (b), controls and it only requires that the Department make an inquiry of extended relatives if the child "is placed into the temporary custody of a county welfare department pursuant to Section 306." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 500.)

This court, in *Robert F.*, followed the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*), a case involving a child being placed into protective custody pursuant to section 340, subdivision (b). In his concurring opinion, Justice

3

Kelley[2], after extensive examination of the legislative history of section 224.2, subdivision (b), and the plain language of the statute (*Adrian L.*, at pp. 358-366), concluded that "[p]lacing a child into 'temporary custody of a county welfare department pursuant to [section] 306' is fundamentally different from taking a child into 'protective custody' under section 340." (*Id.* at p. 357.) "[A] removal under section 306 is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 is not. This distinction illuminates why the legislative choice to limit the scope of section 224.2, subdivision (b), to situations where a child is placed in temporary custody of a county welfare agency pursuant to section 306 aligns it with federal ICWA guidance." As such, the requirement of section 224.2, subdivision (b) did not apply to the case in which the child was removed under section 340 based on the plain language of the statute. (*Adrian L.*, at p. 357.) The *Robert F.* court adopted this reasoning finding that the language of the statue was plain and controlled the interpretation of section 224.2, subdivision (b). (*Robert F.*, *supra*, 90 Cal.App.5th at p. 500.)

Based on the plain language in section 224.2, subdivision (b), it is applicable only to situations where "a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306." Here, Delila was placed into the Department's custody pursuant to court order under section 340, subdivision (a), not through the

---

2 Judge Michael Kelley was sitting on assignment at the Second District Court of Appeal when wrote his concurring opinion in *In re Adrian L.* Therefore, respectfully, I use the title that is correct for his position at the time.

warrantless removal procedure provided by section 306.  Accordingly, the Department was not required to conduct inquiries with "extended family members" at this initial inquiry stage pursuant to section 224.2, subdivision (b).

The majority states that it cannot follow *Robert F.*'s reasoning because it disagrees that section 306 is limited to circumstances where the child is removed without a warrant. The majority argues that section 306 authorizes the Department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant under section 306, subdivisions (a)(1), and (a)(2), and when the child has been taken from home by means of a protective custody warrant issued under section 340, citing to section 306, subdivision (a)(1)).

A similar argument was rejected in *Ja.O.*, another opinion authored by this court. In *Ja.O.*, the mother argued that since section 306, subdivision (a)(1), authorizes a social worker to take a child who has been delivered by a peace officer into temporary custody, "it follows that whenever a peace officer takes a child into protective custody pursuant to a warrant and then delivers the child to a social worker, the child is thereby taken into temporary custody pursuant to section 306." (*Ja.O.*, *supra*, 91 Cal.App.5th at p. 680.) This court rejected that argument finding that, "[s]ubdivisions (a) and (b) of section 340 provide for the issuance of protective custody warrants.  Subdivision (c) of section 340 requires that '[a]ny child taken into protective custody pursuant to this section shall immediately be delivered to the social worker,' who must then conduct an investigation 'pursuant to [s]ection 309.'  Thus, when a peace officer takes a child into protective

5

custody pursuant to a warrant and then complies with the statutory obligation to deliver the child to the social worker, the social worker is taking custody of the child pursuant to section 340, subdivision (c). [¶] But subdivision (a)(1) of section 306 has no application when children are detained pursuant to a warrant under section 340, subdivision (b). Section 306 expressly involves 'temporary custody,' which Article 7 defines, not 'protective custody' under section 340. Subdivision (a)(1) of section 306 thus applies to situations in which an officer detains a child pursuant to one of the sections in Article 7 and the officer then delivers the child to the social worker. [¶] Moreover, if [the] Mother's interpretation of sections 306 and 340 were correct, then most of subdivision (c) of section 340 would be surplusage." (*Ja.O.*, *supra*, 91 Cal.App.5th at p. 680.) The majority is incorrect that all children are taken into temporary custody under section 306.

The majority also relies on the legislative history to insist that section 224.2, subdivision (b), is to be interpreted broadly and that nothing in the text of that law or its legislative history suggests an intent to apply the expanded inquiry in some cases but not others. However, these arguments ignore that the Legislature specifically amended section 224.2, subdivision (b), before its adoption, to add the language limiting it to temporary custody pursuant to section 306. " 'In other words, the Legislature expressly rejected having the inquiry prescribed in section 224.2, subdivision (b) apply in *all* cases when a child is placed into temporary custody and limited such inquiry to cases where a child is placed in temporary custody 'pursuant to section 306." ' " (*Robert F.*, *supra*, 90 Cal.App.5th at p. 502.)

6

Further, this argument also ignores the language of section 224.2 that shows the Legislature has restricted the requirement of inquiry to extended family members. This is evidenced by the inclusion of section 224.2, subdivision (e), which provides for interviewing extended family members but only when there is "reason to believe" a child may be an Indian child. Here, the majority interprets the statutory language counter to the plain language. I find the plain language of section 224.2, subdivision (b), and the legislative history renders it inapplicable to the detention of Delila under section 340.

I see no reason to depart from the reasoning of our previous cases of *Robert F.* and *Ja.O.* I would uphold the judgment.

MILLER

Acting P. J.

7